Broom *v.* Broom.

HENRY BROOM

*v.*

ANNIE BROOM.

1. Mere declarations of a willingness to resume marital relations, without any effort to put an end to a separation, are of little weight in an action for divorce on the ground of desertion.

2. Complainant not having manifested, other than by declarations made in court, when under arrest for non-support, any desire that the defendant should return to him, but acquiescing in her absence, is not entitled to a divorce under the statute.

On final hearing on bill, answer and proofs taken in open court.

*Mr. Charles H. Voorhis,* for the complainant.

*Mr. Thomas F. Noonan,* for the defendant.

GREEN, V. C.

The bill is filed for divorce on the ground of desertion, continued for two years. It falls within the provisions of chapter XXI. of the laws of 1890, the bill having been filed in September, 1889.

The defendant left her husband's house and home, which she claims she was forced to do by his unkind treatment.

The parties were married in December, 1886, in Bergen county, in this state, where complainant resided continuously for many years before his marriage and up to the present time. The

defendant and her mother had lived in complainant's house and had taken charge of his infant child by his former wife, then deceased. Defendant's mother continued to reside with the parties after their marriage until trouble arose with reference to complainant's children by his former wife. She then went away on a Friday, the defendant accompanying her. On defendant's return the next day, she was met by her husband and mother-in-law with a reception which was anything but satisfactory. Accounts vary as to what really took place, but she claims that he practically ordered her away, and that she did go to a friend's house, where she remained until both parties met before a justice of the peace of Bergen county, before whom an arrangement was made, and the parties returned home. There seems to have been more or less of trouble and bickering until June 10th, 1887, on which day complainant left home early in the morning. Late in the day defendant got a neighbor to assist her, and moved all her things to her mother's, who lived at the time in Fort Lee. Her departure was voluntary. Whether it was excusable is unnecessary to determine, in the view I take of the case, but it may be said that her story of ill-treatment is in some particulars corroborated by the testimony of witnesses who seem entirely disinterested. While the fact is that defendant abandoned her husband, there is nothing in the evidence to show that he was not entirely contented to have her go and stay away. He knew his wife was at her mother's, in the same village, yet he never went near her for an explanation of her conduct, or to ask her to return to his home. He says that he met her on the road and did not speak to her. After this, however, they did meet on the Fort Lee boat and walked up the road together. She says she agreed to return to his house and live with him, and he agreed to call that evening at the place she was staying and take her home; that she was willing and expected to go; that she was ready to go with him, and waited for him all the evening, but he did not call for her; that the next day she went to his place and found him in the garden, and asked him why he had not come for her as he had promised, but he would give her no satisfaction. After this she moved to New York with her mother, and, on August 21st,

Broom v. Broom.

1887, she had complainant arrested there for non-support. Under the order of the court he paid her $2.50 a week until November 4th, 1887, when he discontinued the payment, under the advice of counsel. Under orders of the court, however, he again paid her a weekly allowance, until again under the advice of counsel he stopped and was again arrested. While before the court he stated he was willing to take her back. He made this statement several times to the court when under arrest on her application, and at last on one occasion, when she replied, to the inquiry of the justice, that she could not go back and live with him, he was relieved from further payment. Although he made this declaration several times in court, he never gave any manifestation that he was sincere in the expression of such feeling. He was aware of her residence in the city of New York, and on one occasion went to the house where she lived and called her to the street. He refused to go into the house, notwithstanding the fact that it was raining, to escape which they went to a neighboring restaurant. He seems to have been the only one to partake of anything to eat on the occasion, and finally became so boisterous and abusive that she refused to remain longer. He admits that he said nothing to her about returning, and that he went to see her to find out what rents she had collected and what moneys she had paid out. In the above statement I have avoided as far as possible all points about which there was any dispute or contradiction. In my judgment the complainant fails to make a case which entitles him to the relief he asks. The expression of a willingness to receive her again in his home, made under duress of arrest, unaccompanied and not followed by any acts, or even words, to indicate that he was honestly desirous she should do so, cannot be considered as sufficient proof that he wished any change in their relations, or that the separation should come to an end. Declarations to third parties or under oath on the trial, of a willingness to have a wife return to her home, are of little weight when no act or effort to bring about such result is shown. The case is barren of evidence that the complainant made the advances or concessions which a just man ought to have made to put an end to the desertion (*Belden* v. *Belden, 6 Stew. Eq. 94*), or that

he did not accept the situation with satisfaction and regard the separation without regret. Under such circumstances, her desertion, however willful it may have been, was not, under our law as construed by the courts, obstinate.

The bill should be dismissed, with costs to the defendant, including a counsel fee of $25.